ORDER DENYING AMENDED MOTIONS TO MODIFY
KATHARINE ENGLISH, Chief Judge.
A. BACKGROUND AND ISSUE PRESENTED
On July 31, 2003, this Court entered its Order Following Permanent Plan Hearing, ordering, in part, that the child, be continued as a ward of the Tribal Court, temporarily committed to the care, custody, and supervision of the Indian Child Welfare *213 (ICW) Program, and that the child remain in the current foster placement. The Court designated the permanent plan as return of the child to the mother. The concurrent plan is to establish legal guardianship with the current foster parents. In its order, the Court cited the ICW Program’s belief that it is not feasible to continue targeting the [Relative A], as the foster or permanent placement for the child. Even if the s/he were to make the necessary progress, “time is now of the essence” for the child, and any progress that might be made could not be swift enough to result in the child being placed with the [Relative A].
In earlier orders following status review hearings, the Court cited reports of possible past and ongoing sexual abuse in [Relative A’s] home with the alleged abusers being [relative B] and [Relative C], The Court also noted the results of polygraph tests taken by both [Relative B and Relative C]. [Relative B’s] polygraph result was inconclusive. [Relative C’s] results also were inconclusive at first, although s/he admitted to the polygraph examiner that some inappropriate sexual activity might have occurred, but s/he failed two subsequent polygraph tests, indicating that s/he was not being truthful when s/he denied that s/he had sexually abused the child. Based in part on the polygraph results, the Court Ordered [Relative A] not to allow [Relative C] on her/his property. At that time, the child was still in [Relative A’s] care and in her/his home. Despite the Court’s clear order, [Relative A] allowed [Relative C] to be on her/his property. With the Court’s approval, the child was then removed from [Relative A’s] home and placed in foster care.
[Relative A] now has filed an Amended Motion and a Supplemental Motion asking the Court to modify its earlier Orders of September 19, 2002, November 19, 2002, and March 24, 200:1, “by striking any and all references to polygraph exams or results and noting that such evidence is inadmissible, and, in the alternative, respectfully requests the Court to subpoena the polygraphists, and persons interpreting the tests, for a closed hearing on this matter.” [Relative A] contends that polygraph evidence is or should be inadmissible, that it is unreliable, and that its introduction at earlier hearings deprived her/ him of due process. The ICW Program responds by arguing that [Relative A’s] challenge is not timely, and that the evidence was properly admitted. For the reasons that follow, the Court Denies the Amended and Supplemental Motions.[1]
B. DISCUSSION
It seems likely that this challenge has been brought far too late. The orders that [Relative A] now contests and seeks to alter were entered months before s/he filed her/his present motions. S/he admits that her/his attorney did not challenge the admissibility of polygraph evidence at any of those hearings or promptly contest the validity of any of those Orders because they referred to polygraph results. And the polygraph evidence cannot have come as a surprise to [Relative A] or her/his attorney at any of those earlier hearings. In each instance, a Status Review Report *214 was filed with the Court and given to the parties in advance of the hearings. .
[Relative A] relies on provisions of the ICW Ordinance that allow; the Court to modify, revoke, or extend its orders at any time upon motion of a party and with good cause, and that permit the Court to require a person to appear. Indian Child Welfare Ordinance § 7.10(r)(i). But, at most, those provisions vest the Court with discretion, and do not compel the result that [Relative A] now seeks. Moreover, it is doubtful whether unexplained delay in advancing a legal objection to the receipt of evidence amounts to “good cause” in any event. [Relative A] does not contend that the law or any pertinent facts have changed in the interim. Instead, her/his attorney simply seems to have belatedly discovered an objection that could have been interposed earlier. In addition, in this context where time is of the essence, and a young child’s life and future must take precedent in the analysis, it seems particularly inappropriate to entertain motions based on afterthought that are filed months after the orders that are challenged.
Despite the Court’s considerable doubt about the timeliness of the present motions, and without holding or deciding that the motions are timely or that any similarly delayed motions will be entertained in the future in this or any other case, some comments about the merits of the Motions nonetheless seem appropriate. Evidence regarding polygraph tests and results is not uncommon in cases involving a child’s welfare, particularly when allegations have been made regarding abuse, sexual or physical. Because the issues may arise often, some guidance from the Court is appropriate.
The parties spar over which standards for the admissibility of evidence apply here. [Relative A] suggests the standards that govern federal administrative agency proceedings apply, while the ICW Program disagrees. The Court finds it unnecessary to resolve this debate. The standards that apply under the Federal Rules of Evidence (FRE), which this Court has adopted, are at least as demanding as those that apply under the federal Administrative Procedures Act (APA). And, contrary to [Relative A’s] suggestion, the FRE do not absolutely preclude the admission of polygraph evidence.
[Relative A] relies on Daubert v. Merrill Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), as setting out the current standard for the admissibility of scientific evidence in the federal courts. That standard is based, in turn, on the rules of evidence that apply to expert testimony, as well as the rules regarding relevance and the balance of probability against the possibility of unfair prejudice. FRE 702, 401, 403. [Relative A] suggests that admission of polygraph evidence is incompatible with Daubert, which, at least for present purposes, this Court accepts as persuasive authority.
To the contrary, however, the post-Dau-bert trend has been to rescind per se rules barring the admission of polygraph evidence in all cases, adopting instead a more case-specific analysis that grants federal district courts with discretion to admit such evidence. Giannelli and Imwinkelreid, 1 Scientific Evidence (3d ed 1999), § 8-4(D), at 401 (“After Daubert, most federal courts rejected the per se rule of exclusion [of polygraph evidence] and * ⅜ * began recognizing the trial court’s discretion to admit polygraph evidence”), § 8-4(B) at 395 (“In short, the trend appears to be toward admissibility”) (internal quotation marks and citation omitted). The Fifth, Sixth, Seventh, Ninth, Tenth and Eleventh Circuits appear to have re *215 jected per se rules of exclusion in favor of a more flexible approach that gives trial courts discretion to admit polygraph evidence. Id. at 393 (citations omitted). See United States v. Posado, 57 F,3d 428, 431-34 (5th Cir.1995) (determining that Dain-hert effectively overruled that court’s earlier per se rule of inadmissibility); United States v. Thomas, 167 F.3d 299, 308 (6th Cir.1999) (no per se rale of exclusion, although polygraph evidence is “disfavored”); United States v. Lea, 249 F.3d 632, 638 (7th Cir.2001) (district courts have discretion to admit or reject polygraph evidence); United States v. Cordoba, 104 F.3d 225, 228 (9th Cir.1997) (Dauhert effectively rejected per se rule of exclusion); United States v. Piccinonna, 885 F.2d 1529, 1537 (11th Cir.1989) (pve-Daubert decision holding that district courts have discretion to admit polygraph evidence).
Nor is polygraph evidence as unreliable as [Relative A’sJ Motions indicate. Admittedly, the subject is a controversial and hotly debated one. “As the Supreme Court has noted, ‘there is simply no consensus that polygraph evidence is reliable. To this day, the scientific community remains extremely polarized about the reliability of polygraph techniques’ ” United States v. Lea, 249 F.3d at 638, quoting United States v. Scheffer, 523 U.S. 303, 309, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998). However, at least some knowledgeable observers believe that the test is accurate and reliable. One such commentator contends that “[sjcientific research indicates that polygraph techniques can be highly accurate.” David C. Raskin, “The Polygraph in 1986: Scientific, Professional and Legal Issues Surrounding Application and Acceptance of Polygraph Evidence,” 1986 Utah L Rev 29, 72. “The existing literature suggests an accuracy of 90 % or higher” in certain instances. Id. See also Giannelli and Imwinkelreid, 1 Scientific Evidence § 8-3(C) at 381 (research studies “ ‘give different estimates of the accuracy of control question tests in criminal investigations, ranging from about 80% to 95%’ ”) (quoting a Department of Defense report).
And the circumstances present here appear to be those in which it is most likely that polygraph results will be accurate and reliable. The test works best in the context of specific fact issues, such as those that tend to arise in criminal investigations. 1 Scientific Evidence § 8-3(0 at 381 (“polygraph examinations involving specific fact issues produce more valid results than those involving mental state issues”) (footnote omitted); Raskin, “The Polygraph in 1986,” 1986 Utah L Rev at 72 (test is most accurate when it involves suspects in criminal investigations and other specific incidents).[2]
In addition, some of the concerns that have led courts to exclude polygraph evidence, viz., the danger that jurors will be unduly impressed with polygraph evidence and may abandon their duty to determine witness credibility in favor of rely *216 ing blindly on the opinion of an expert, are not present in a case such as this one, where the Court is the trier of fact. See Gibbs v. Gibbs, 210 F.3d 491, 500 (5th Cir.2000) (“Most of the safeguards provided for in Daubert are not as essential in a case such as this where a district court judge sits as the trier of fact in place of a jury”). It was the danger of such undue influence that prompted the Oregon Supreme Court to hold that polygraph evidence is generally inadmissible in State v. Brown, 297 Or. 404, 440-41, 687 P.2d 751 (1984)—-a case cited by [Relative A’s] attorney. In that case, the Oregon court observed that, “[b]y its very nature, the polyp-aph purports to measure truthfulness and deception, the very essence of the jury’s role.” In a jury trial, the evidence thus may “divert” the jurors from the evidence “to a distorted valuation of the polygraph evidence!.]” That danger simply is not present here, where the Court is the trier of fact.
Another contrast with the cases cited by [Relative A] is pertinent. Most of those decisions, and indeed most of the federal decisions cited above in this Order, involve the issue of whether polygraph evidence is admissible in a criminal trial. That is not the most apt comparison, however. No one is on trial or is accused of a crime in this case. The issues here center on the proper placement for this child. In this context, a more fitting comparison is to cases where courts have decided whether polygraph evidence may be considered in determining whether there is probable cause. And in that setting, courts have admitted the evidence. See Cervantes v. Jones, 188 F.3d 805, 813 n. 9 (7th Cir.1999) (“as a matter of federal law, polygraph results are one of many factors which may be used in determining whether, from an objective viewpoint, probable cause for an arrest existed under the Fourth Amendment”). See also Bennett v. City of Grand Prairie, Tex., 883 F.2d 400, 405-06 (5th Cir.1989) (considering polygraph evidence when determining whether probable cause existed); Johnson v. Schneiderheinz, 102 F.3d 340, 342 (8th Cir.1996) (polygraph results are one fact that can be considered in evaluating probable cause); Herb Hallman Chevrolet v. Nash-Hohnes, 169 F.3d 636, 639 (9th Cir.1999) (relying on polygraph evidence when determining if probable cause exists); Craig v. Singletary, 127 F.3d 1030, 1046 (11th Cir.1997) (deceptiveness from polygraph test may be one factor to consider in probable cause determination).
In sum, this Court is not convinced that polygraph evidence always is inadmissible, and nothing in [Relative A’s] current Motions convinces the Court to modify or revisit its prior orders or to order an evidentiary hearing. If [Relative A] had wanted to examine the polygraph evidence or the polygraphers in more detail, s/he could have asked for an evidentiary hearing much earlier. The Court will not exercise its discretion to order such a hearing now.[3]
A final point remains. As the ICW Program notes, [Relative A’s] Motions seem to misapprehend the significance of the polygraph evidence in this case. The evidence played a role, admittedly. It was at least part of the reason that led the Court to order that [Relative A] not allow' [Relative C] to be in her/his home. But this case is not about the polygraph tests themselves. The child in this case was removed from [Relative A’s] home because s/he allowed [Relative C] to be there, despite an unam *217 biguous and forceful Court order that s/he not permit [Relative C] to be present. Any doubts [Relative A] or her/his attorney might have about the invalidity of polygraph results did not permit [Relative A] to violate this Court’s Order. [Relative A’s] failure to abide by this Court’s Order says much more about her/his lack of assertiveness, than it does about the supposed unreliability of polygraph results.
C. ORDER
For the reasons given above, [Relative A’s] Amended Motion to Modify this Court’s prior orders or for an evidentiary hearing is denied. [Relative A’s] Motion for Leave to File Supplemental was granted, but the Supplemental Motion also is denied.
IT IS SO ORDERED.

. [Relative A] has filed a Notice of Appeal, apparently seeking appellate court review of this Court’s Order Following the Permanent Plan Hearing. The filing of that Appeal may raise the question—although the parties do not appear to have thought about it—of whether this Court has jurisdiction to rule on the pending Motions. The Court concludes that is has jurisdiction. The Court’s jurisdiction over the ICW Program cases is continuing, and the appeal appears to challenge the Order entered after the Permanent Plan Hearing, not the earlier orders that are challenged here.

. [Relative A’s] Motions rely on a recent study of polygraph tests conducted by the National Academy of Sciences. That study, however, draws the same distinction noted here. That is, the report contrasts "event-specific investigations (e.g., after a crime)" with other uses, such as in employee screening, where there may be considerably more ambiguity involved in the questioning and thus more potential for erroneous results. (NAS report, executive summary-at 1). With regard to the former, the report concludes: “Notwithstanding the limitations of the quality ot the empirical research and the limited ability to generalize to real-world settings, we conclude that in populations of examinees such as those represented in the polygraph research literature, untrained in [polygraph] countermeasures, specific-incident polygraph tests can discriminate lying from troth telling at rates well above chance, though well below perfection." (Id. at 4).

. This point is the answer to (Relative A's] due process claim. All the process that was due, and the opportunity for a hearing, were avaiiable to her/him. S/he simply failed to take advantage of that available process.